J-S22034-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAWN JAMES HAMILTON, | : | |
| | : | |
| Appellant | : | No.  1072 MDA 2015 |

Appeal from the PCRA Order May 18, 2015
in the Court of Common Pleas of Luzerne County,
Criminal Division, at No(s): CP-40-CR-0003751-2012
CP-40-CR-0000099-2013

BEFORE:    MUNDY, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:              **FILED MAY 17, 2016**

Shawn James Hamilton (Appellant) appeals from an order which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  In addition, Appellant's counsel seeks to withdraw his representation of Appellant pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  We affirm the order and grant counsel's application to withdraw.

On October 24, 2012, Appellant was charged at CP-40-CR-0003751-2012 (3751-2012) with three counts of criminal homicide, one count of criminal attempt homicide, and four counts of robbery for his involvement in an incident that occurred on July 7, 2012.  On December 10, 2012, the Commonwealth fled notice of its intent to seek the death penalty against

*Retired Senior Judge assigned to the Superior Court.

Appellant, and this case was consolidated with that of Appellant's brother and co-defendant, Sawud Davis.

Subsequently, on December 13, 2012, Appellant was charged at CP-40-CR-0000099-2013 (99-2013) with one count of criminal homicide in connection with a shooting that occurred on July 6, 2012.

Allyson Kacmarski, Esquire, and Robert Buttner, Esquire, were court-appointed to handle the guilt phase of 3751-2012.[1] Mark Bufalino, Esquire, was later appointed to handle the penalty phase of trial. Appellant's defense team also included a private investigator (hired before Appellant's preliminary hearing) and Louise Luck, a mitigation specialist.

On December 20, 2013, Appellant entered into a plea agreement with respect to both cases. Specifically, at 3751-2012, Appellant pled guilty to three counts of criminal homicide and one count of criminal attempt homicide and, at 99-2013, he pled guilty to one count of criminal homicide. In exchange, the Commonwealth agreed to withdraw the remaining charges at both criminal informations and indicated it would not seek the death penalty in either case. Appellant waived his right to a pre-sentence investigation and proceeded immediately to sentencing. The trial court imposed four consecutive life sentences at each criminal homicide count, and

---

[1] Because she was already handling Appellant's death penalty case, Attorney Kacmarski volunteered to be court-appointed to represent Appellant on 99-2013.

a consecutive term of twenty to forty years' imprisonment at the criminal attempt homicide charge.

Appellant did not file a direct appeal. On April 24, 2014, Appellant *pro se* filed a PCRA petition. Counsel was appointed and an amended petition was filed. On May 1, 2015, the PCRA court held a hearing. At the hearing, Appellant argued only claims of trial counsel ineffectiveness, alleging that he was left with no choice but to plead guilty due to his attorneys' poor case preparation, failure to investigate and failure to provide him with discovery, as well as the mitigation specialist's alleged statement that she was not going to work for him because Luzerne County was not paying her. N.T., 7/17/2015, at 3-44.

On May 18, 2015, the PCRA court issued an order denying Appellant's petition. This timely appeal followed. Thereafter, PCRA counsel sought from this Court leave to withdraw his representation of Appellant pursuant to *Turner*/*Finley*. On January 14, 2016, Appellant filed *pro se* a response to counsel's petition to withdraw raising issues of trial and PCRA counsel ineffectiveness.

Before we may address the potential merit of Appellant's claims, we must determine if counsel has complied with the technical requirements of *Turner* and *Finley*.

> … *Turner*/*Finley* counsel must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the

nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

If counsel fails to satisfy the foregoing technical prerequisites of **Turner**/**Finley**, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper **Turner**/**Finley** request or an advocate's brief.

However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

We are satisfied that counsel has complied with the technical requirements of **Turner** and **Finley**. Therefore, we will consider the substantive issues contained in counsel's brief.

Appellant's overarching claim on appeal is that the ineffective assistance of his trial counsel rendered his guilty plea involuntary and unknowing. Specifically, Appellant claims that counsel was ineffective

alleging: (1) two attorneys on his defense team, Attorneys Bufalino and Buttner, were not death penalty certified at the time of his plea, (2) counsel was aware of Appellant's mental health issues, but nonetheless allowed him to plead guilty, and (3) counsel failed to provide Appellant with discovery, failed to investigate properly and were unprepared for trial; thus, Appellant had no choice but to plead guilty. **Turner**/**Finley** Brief at 11.

Our standard and scope of review is well-settled:

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner.

Furthermore,

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.

Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test.

***Commonwealth v. Freeland***, 106 A.3d 768, 775 (Pa. Super. 2014)

(internal quotation marks and citations omitted).

Additionally,

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

[T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made.

With regard to an attorney's duty to investigate, the Supreme Court has noted that the reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation. With regard to the voluntariness of a plea, a guilty plea colloquy must affirmatively demonstrate the defendant understood what the plea connoted and its consequences. Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him.

***Commonwealth v. Willis***, 68 A.3d 997, 1001-02 (Pa. Super. 2013) (citations and quotation marks omitted).

With respect to Appellant's first allegation of ineffectiveness, Rule of Criminal Procedure 801 sets forth the qualifications for defense counsel in capital cases and mandates that "[i]n all cases in which the district attorney has filed a Notice of Aggravating Circumstances pursuant to Rule 802, before an attorney may participate in any stage of the case either as retained or appointed counsel, the attorney must meet the educational and experiential criteria set forth in this rule." Pa.R.Crim.P. 801. However, the Comment to the Rule provides that

> [a]n attorney may serve as "second chair" in a capital case without meeting the educational or experience requirements of this rule. "Second chair" attorneys may not have primary responsibility for the presentation of significant evidence or argument, but may present minor or perfunctory evidence or argument, if deemed appropriate in the discretion of the court. Service as a "second chair" in a homicide case will count as a trial for purposes of evaluating that attorney's experience under paragraph (1)(c) of this rule.

Pa.R.Crim.P. 801, Comment.

Appellant's bald allegation that Attorneys Bufalino and Buttner were non-compliant with Rule 801 is not supported by the record. Neither attorney about whom Appellant complained was called to testify at the PCRA hearing. However, Appellant's lead defense attorney, Allyson Kacmarski, testified that she was certified properly under Rule 801 during her representation of Appellant, that she was counsel of record, and that she

- 7 -

handled all record matters in the case. N.T., 7/17/2015, at 40. Moreover, Attorney Kacmarski testified that she reached out to Attorney Bufalino for advice about mitigation experts soon after being appointed to represent Appellant because she was aware Attorney Bufalino had recently tried a death penalty case. *Id.* The PCRA court found this testimony credible. PCRA Court Opinion, 5/18/2015, at 4 (unpaginated). "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013). Because the record establishes that Appellant's lead counsel was Rule 801 compliant,[2] and because the Comment to the Rule permits non-complaint attorneys to serve as second chair, we agree with counsel that Appellant's claim of ineffectiveness in this regard is without merit. *See Freeland*, 106 A.3d at 775.

Appellant next contends that his attorneys were ineffective because they permitted him to plead guilty despite his alleged "mental health issues." *Turner*/*Finley* Brief at 20-21; Appellant's Response at 3-4.[3]

> A defendant is presumed to be competent to stand trial. Thus, the burden is on Appellant to prove, by a preponderance

---

[2] Indeed, Attorney Kacmarski's testimony, and Attorney Bufalino's appointment to Appellant's defense team specifically to handle the penalty portion of trial, suggests that Attorney Bufalino was properly certified.

[3] As counsel points out, the issue of Appellant's mental health and its effect on the voluntariness of his plea was not addressed during Appellant's PCRA hearing, although this claim was included in his PCRA petition. *Turner*/*Finley* Brief at 20-21.

of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, Appellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense.

*Commonwealth v. Rainey*, 928 A.2d 215, 236 (Pa. 2007).

The record is devoid of any evidence that Appellant had a mental health issue that would prevent him from entering a knowing, intelligent or voluntary guilty plea. Accordingly, we hold that Appellant has failed to meet his burden and is entitled to no relief.

Next, Appellant contends that counsel was ineffective for failing to investigate his case, provide him with discovery, or prepare him adequately for trial. *Turner/Finley* Brief at 11; Appellant's Response at 7. As stated above, with regard to an attorney's duty to investigate, "the reasonableness of a particular investigation depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." *Willis*, 68 A.3d at 1002.

At the PCRA hearing, Appellant admitted that Attorney Kacmarski met with him at the jail to discuss his case approximately 30 times before his trial date. N.T., 7/17/2015, at 5. Each of those meetings lasted approximately one hour; however, Appellant claimed he could not recall what they discussed. *Id.* at 5-6. Appellant contended that he never received his discovery from Attorney Kacmarski and that no one discussed trial strategy with him prior to his plea. *Id.* at 7, 10.

Attorney Kacmarski agreed that she met with Appellant at the county jail approximately 30 times and stated that she had an investigator appointed prior to the preliminary hearing. *Id.* at 31-32. She testified that, once the Commonwealth gave notice of its intent to seek the death penalty, she accepted Attorney Bufalino's offer to handle the death penalty phase of trial and petitioned the court to appoint him. *Id.* at 14. Additionally, she received and reviewed the discovery for each of Appellant's cases and physically visited both crime scenes. *Id.* at 36. However, due to the volume and sensitive nature of information contained in Appellant's discovery packets, she did not provide him with a copy, although she did bring portions of the discovery to the jail to discuss with him. *Id.* at 35-36, 42.

Attorney Kacmarski testified that she discussed the possibility of a guilty plea with Appellant after receiving a letter from him in which he expressed a desire to plead guilty in an effort to help his co-defendant brother avoid a life sentence. *Id.* at 32-34. Accordingly, she and the attorney appointed to represent Appellant's brother negotiated a deal with the Commonwealth in which the Commonwealth agreed to recommend a 20-to-40 year sentence for Appellant's brother in exchange for Appellant's guilty plea. *Id.* at 33-34.

Once again, the trial court credited Attorney Kacmarski's testimony. Having determined that counsel's action was reasonable, the court and

counsel concluded that Appellant's claim of ineffective assistance of counsel on this basis did not entitle him to relief. We agree.

Appellant's next issue deals with the alleged non-payment of the mitigation specialist retained for the penalty phase portion of his case. ***Turner*/*Finley*** Brief at 23. At his PCRA hearing, Appellant testified that the specialist, Louise Luck, relayed a message to him through his mother that "she won't be working anymore because the county isn't paying her." N.T., 7/17/2015, at 26. Appellant did not discuss this issue with his attorneys, *id.* at 19-20, nor did they discuss this potential issue with him. ***Id.*** at 26. Ms. Luck was not called to testify at the PCRA hearing.

When asked about this allegation at the PCRA hearing, Attorney Kacmarski testified that Ms. Luck had completed a large amount of work for the penalty phase of Appellant's trial prior to his decision to plead guilty. ***Id.*** at 37-38. Attorney Kacmarski was unaware of any issues with Ms. Luck's payment as Ms. Luck was working primarily with Attorney Bufalino on the penalty phase of trial, but she knew there was "no objection" from the court to keep paying Ms. Luck due to her important role in the case. ***Id.*** at 37-38.

Once more, Appellant is unable to prove that counsel was ineffective for failing to investigate an issue of which she had no knowledge. ***Willis***, 68 A.3d at 1002. Additionally, the testimony credited by the PCRA court belies Appellant's contention. Accordingly, we agree with counsel that this issue merits him no relief.

Based on the foregoing, we agree with counsel that the issues Appellant raises in this appeal are meritless.[4] Accordingly, the PCRA court did not abuse its discretion in denying Appellant's petition. Therefore, we grant counsel's petition to withdraw, and affirm the PCRA court's May 18, 2015 order.

Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2016

---

[4] In his *pro se* response to counsel's **Turner**/**Finley** brief, Appellant raises the issues addressed above, as well as new claims of PCRA counsel ineffectiveness. Appellant's Response at 3-10. "Claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal." **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*). Instead, such claims must be raised either immediately before the PCRA court or in a serial petition. **Id.** Accordingly, we find Appellant's new ineffectiveness claims non-cognizable.